**Cheryl PORTER**

v.

**MAINE STATE RETIREMENT SYSTEM.**

Supreme Judicial Court of Maine.

Argued March 2, 1992.

Decided May 8, 1992.

Michael A. Nelson, Peter B. LaFond (orally), Jensen, Baird, Gardner & Henry, Portland, for plaintiff.

Michael Carpenter, Atty. Gen., Polly Haight Frawley (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Cheryl Porter appeals from a judgment of the Superior Court (York County, *Fritzsche, J.*) affirming the decision of the Board of Trustees of the Maine State Retirement System (MSRS) that Porter's deceased husband, Vance Porter, had less than twenty-five years of creditable service in connection with his employment as a teacher, thereby entitling Porter to survivor benefits only, as opposed to full service retirement benefits. We are unpersuaded by Porter's contention that the method employed by MSRS for calculating service credit for a teacher's unused sick days is inconsistent with the statute and we affirm the judgment.

Vance Porter was a teacher in M.S.A.D. # 57 for twenty-four full academic years and was in the middle of his twenty-fifth year when he died in February of 1990. He had worked and been paid for ninety-nine days of service in his twenty-fifth year of teaching and had accumulated ninety-eight days of unused, unpaid sick leave. He was a member of the Maine State Retirement System. *See* 5 M.R.S.A. §§ 17001(14)(B), (20), 17651 (1989). Cheryl Porter is his designated beneficiary and is entitled to the payment of death benefits. 5 M.R.S.A. §§ 17951–17954 (1989 & Supp. 1991). The level of death benefits to be received by the beneficiary depends on the age and length of service of the member-employee. A member qualifies for "service retirement" benefits when the member reaches sixty years of age or has completed twenty-five years of creditable service. 5 M.R.S.A. § 17851 (1989 & Supp.1991). If a member dies *before* fulfilling the age and length of service requirements for service retirement benefits, the beneficiary is entitled to either a refund of contributions or survivor benefits. 5 M.R.S.A. § 17953. If a member dies *after* fulfilling the conditions for service retirement, the beneficiary is entitled to full service retirement benefits, a significantly larger sum. 5 M.R.S.A.

§ 17954.[1] Because Vance Porter was forty-seven years old at the time of his death, the issue presented for resolution in this case is whether he had twenty-five years of creditable service.

MSRS calculated that Vance Porter had a total of twenty-four years, ten months and twenty-four days of creditable service and determined that Cheryl Porter was entitled to survivor benefits pursuant to section 17953, as opposed to full service retirement benefits. Porter disputes that determination, in particular the formula used by MSRS to calculate unused sick leave. Following the denial of her appeal to the Executive Director of MSRS, Porter appealed to the Board of Trustees of MSRS. *See* 5 M.R.S.A. § 17451. The Board denied Porter's appeal, and she, in turn, sought review of that decision in Superior Court pursuant to M.R.Civ.P. 80C and 5 M.R.S.A. §§ 11001–11008 (1989). The Superior Court affirmed the Board and this appeal followed. Because the Superior Court acted as an intermediate appellate court, we examine directly the decision of the Board to determine whether the Board abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record. *Robinson v. Board of Trustees of Maine State Retirement Sys.*, 523 A.2d 1376, 1378 (Me.1987); 5 M.R.S.A. § 11007(4)(C) (1989).

In reviewing the Board's decision, we must first examine the statutory provisions that govern the determination of benefits to be paid to employee-members or their designated beneficiaries. Employee-members receive certain service credits that dictate their eligibility for service retirement benefits under 5 M.R.S.A. § 17851. "Service credit" is defined as "credit received for creditable service," 5 M.R.S.A. § 17001(38), and "creditable service" is defined as

a person's membership service, the person's prior service and service for which credit is allowable under sections 17755 and 17756; section 17760, subsection 2;

section 18258; sections 18355 and 18356; and section 18360, subsection 2.

5 M.R.S.A. § 17001(10). An employee-member, then, receives service credit for membership service (section 17001(21)); prior service credit (sections 17755 and 18355); unused and unpaid sick or vacation leave (sections 17756 and 18356); and prior service as a member of the armed forces (sections 17760, 18258, and 18360). The categories of service credit relevant to this case are Vance Porter's membership service, concerning which there is no dispute, and unused and unpaid sick leave, an issue that is disputed and is the focus of this appeal.

Membership service is defined as "service rendered while a member of the retirement system on account of which contributions are made and for which credit is allowable under [section 17751 or section 18351]." 5 M.R.S.A. § 17001(21). Further, "service" means "service as an employee for which compensation was paid." 5 M.R.S.A. § 17001(37). Section 17751 of the retirement system statute governs the determination of membership service credit and provides in pertinent part:

The determination of one-year's service credit shall be governed as follows:

**1. All service in one calendar year.** The board may not allow more than one year's service credit for all the service:

A. In one calendar year for state employees; or

B. In one school contract year for teachers or state employees employed as teachers.

. . . .

**3. Board determination.** The board shall determine by appropriate rules how much service in any year qualifies for one year's service credit. Service rendered for the full normal working time in any year qualifies for one year's service credit.

5 M.R.S.A. § 17751. Pursuant to this section, MSRS has adopted an administrative practice of calculating membership service credit for permanent full-time state em-

**1.** In this case, the difference to Cheryl Porter between survivor benefits under section 17953 and service retirement benefits under section 17954, is approximately $170,000 over the period of her life expectancy.

ployees (who are not teachers) beginning with the first day of employment and ending with the date of termination of employment. including any days of paid vacation or sick leave actually taken before the date of termination. *See* Me. State Retirement Sys. Reg., ch. 401(2)(A) (Apr. 30, 1987). Because under section 17751(3) service rendered for the full normal working time in any year qualifies for one year's membership service credit, nonteacher employee-members are awarded one full year's membership credit for 260 days of service, a normal working year (i.e., 52 weeks × 5-day work week). Put another way, nonteacher employee-members earn seven calendar days credit for each five days of actual service.

Because they work a school year, section 17751(1)(B) and (3) provides that the determination of one year's membership service credit for teachers is to be different than that of other state employees. Pursuant to this section, MSRS has adopted an administrative practice of awarding permanent, full-time teachers one year of membership service credit for each full contract year of service. *See* Me. State Retirement Sys. Reg., ch. 404(2)(A) (Nov. 4, 1989). For teachers, therefore, a full year's membership service credit is awarded for 180 days of service, a normal school year. MSRS calculates and converts membership service credit for teachers into years, months, and days by taking the number of service days, including any days of paid vacation or sick leave actually taken before termination, and multiplying the total by 2, then dividing by 30.[2] Applying this formula, MSRS credited Vance Porter with one year of membership service for each of his full teaching years, totalling twenty-four years. For the ninety-nine days Mr. Porter worked and for which he was paid in his twenty-fifth year, MSRS credited him with an additional six months and eighteen days.[3] Therefore, Vance Porter was credited with

membership service totalling twenty-four years, six months, and eighteen days. Porter does not dispute the calculation of membership service credit. She contends, rather, that the method employed by MSRS for the calculation of her late husband's unused sick days was improper and contrary to the statutory scheme.

Section 17756 of the retirement system statute governs service credit for unused sick leave. That section provides in part:

**1. Service credit.** Unused accumulated or accrued sick leave, unused vacation leave, or a combination of both, for which a member is credited on termination of service, but for which the member does not receive payment, qualifies for service credit.

**2. Limitation.** Leave qualifying for service credit under subsection 1 may not exceed a total of 90 days....

The administrative practice adopted by MSRS with regard to service credit for unpaid, unused sick leave is to give seven days of credit for each five days of unpaid, unused sick leave. MSRS converts accumulated unpaid, unused sick leave into months and days by multiplying the number of such days by ⁷⁄₅, then dividing by 30. MSRS calculates and converts unpaid, unused sick days in the same manner for all employees, teachers and other employees alike. Though Vance Porter had accrued ninety-eight days of unused sick leave over the years, the statute allows service credit for a maximum of only ninety days. 5 M.R.S.A. § 17756(2). Applying its administrative formula, MSRS awarded Vance Porter four months and six days service credit for his unpaid, unused sick days.[4] Therefore, the total amount of creditable service awarded to Mr. Porter (membership service credit plus credit for unpaid, unused sick days) was twenty-four years, ten months and twenty-four days, thirty-six days short of the twenty-five-year require-

---

**2.** Because a full contract year for teachers is 180 days, MSRS multiplies these service days to equal (roughly) a full calendar year, and then divides by 30 to convert to months. Thus, 180 × 2 = 360 + 30 = 12 *months creditable membership service for a full contract year of teaching.*

**3.** 99 × 2 = 198 ÷ 30 = 6.6 months, or 6 months and 18 days.

**4.** 90 × ⁷⁄₅ = 126 ÷ 30 = 4.2 months, or 4 months and 6 days.

ment for full service retirement benefits. 5 M.R.S.A. § 17851(3).

■ Cheryl Porter contends that the method employed by MSRS for the calculation of service credit for unpaid, unused sick days is inconsistent with the governing statute. Porter argues that because both membership service and unpaid, unused sick days come within the general definition of creditable service, *see* 5 M.R.S.A. § 17001(10), they should be calculated the same way. According to Porter, a teacher's unused sick days should be calculated using the same "two-for-one" formula as MSRS employs with regard to a teacher's membership service, rather than the "seven-for-five" formula presently used to calculate unused sick days for both teachers and other employee-members alike.[5] MSRS errs, she asserts, by converting teachers' unused sick days on the basis of a 260–day work year rather than a 180–day work year.

■ In determining the meaning of a statute, this court looks first to the language of the statute itself. *Bangor Hydro–Elec. Co. v. Board of Envtl. Protection*, 595 A.2d 438, 442 (Me.1991). 5 M.R.S.A. §§ 17751(1)(B) and (3), specifically provide that teachers and nonteachers be treated differently for purposes of calculating membership service credit. The calculation of membership service takes account of the number of days in the employee-member's normal work year, which, as indicated previously, is different for teachers than other employee-members. *See* 5 M.R.S.A. § 17751(3) (service rendered for full normal working time in any year qualifies for one year's service credit). Membership service credit is based on service rendered for which the member was paid and on account of which contributions were made to the retirement system. *See* 5 M.R.S.A. § 17001(21), (37). Unlike section

17751, section 17756, which governs service credit for unused sick days, makes no reference to the length of the member's normal work year and makes no distinction between teachers and nonteachers. Construing section 17756, MSRS calculates service credit for unused sick leave the same for teachers and other employee-members alike. An administrative agency's construction of a statute administered by it is entitled to great deference and will be upheld unless the statute plainly compels a contrary result. *Senty v. Board of Osteopathic Examination & Registration*, 594 A.2d 1068, 1072 (Me.1991). In the instant matter, the governing statute does not compel a result different than that reached by MSRS. MSRS's interpretation, as evidenced by its administrative practices, is reasonable and we defer to it.

Contrary to Porter's contention, there is no requirement that a teacher's unused sick days be calculated in the same manner as a teacher's membership service. Porter's assertion that the statute treats days worked and unused sick days the same for purposes of calculating creditable service is not supported by the language of the statute. Not only is the expressed distinction between teachers and nonteachers in section 17751 absent in section 17756, but so is the rationale underlying such a distinction. Membership service credit under section 17751 is based on service, but unused sick days are not "service" as compensation not is paid for every such day,[6] nor are contributions made to the retirement system on account of such days. *See* 5 M.R.S.A. § 17001(21), (37). While it is true, as Porter argues, that both membership service and unpaid, unused sick days constitute creditable service, there is no statutory requirement that they be calculated in the same manner.

---

5. According to Porter's interpretation of the relevant statutes, the ninety days of unpaid, unused sick leave would render a service credit of six months (90 × 2 ÷ 30) and would, when added to his membership service of twenty-four years, six months and eighteen days, give Vance Porter over twenty-five years of creditable service.

6. 5 M.R.S.A. § 17001(13)(B) indicates that compensation may be paid for a certain number of unused sick days. This provision, however, does not bring unused sick days within the definition of membership service.

We are further unpersuaded by Porter's argument that MSRS's interpretation and method of calculation is inconsistent with the legislative intent as expressed in 5 M.R.S.A. § 17050 (1989). That section provides:

It is the intent of the Legislature to encourage qualified persons to seek public employment and to continue in public employment during their productive years. It is further the intent of the Legislature to assist these persons in making provision for their retirement years by establishing benefits reasonably related to their highest earnings and years of service and by providing suitable disability and death benefits.

Section 17050 does not require payment of the *highest possible* benefits, as Porter asserts, but rather benefits reasonably related to the member's highest earnings and years of service. We are satisfied that MSRS's construction of section 17756 as reflected in its method of calculation of unpaid, unused sick days so as to give seven days of credit for each five days of unpaid, unused sick leave for both teachers and other employees is both reasonable and consonant with the legislative intent.

The entry is:

Judgment affirmed.

All concurring.